UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | |
| v. | | No. 25-CR-310 |
| JAIME F. ORTEGA-URQUIDI, | | |
| Defendant. | | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Jaime Ortega-Urquidi ("Ortega-Urquidi" or "Defendant"), by and through undersigned counsel, respectfully submits this Sentencing Memorandum. Pursuant to 18 U.S.C. § 3553, Mr. Ortega-Urquidi respectfully requests that this Court impose a sentence of: (a) 120 months in prison, (b) 8 years supervised release, (c) no fine, (d) no restitution, and (e) the mandatory special assessment.

## I. ARGUMENT

### A. 120 Months is the Appropriate Sentence under 18 U.S.C. § 3553(a)(1)

One hundred and twenty months is sufficient but not greater than necessary to meet the sentencing aims of 18 U.S.C. § 3553(a). The proposed sentence is a jointly recommended sentence with the United States who had a unique position to assess Mr. Ortega, his history, and his conduct, and to recommend a sentence in line with other nonviolent drug offenders.

#### 1. 18 U.S.C. § 3553(a)(1) – History and Characteristics

Mr. Ortega Urquidi's history and characteristics, while reflecting errors of judgment, show that he is not a violent person and that he poses no physical threat to

1

society.  More importantly, it shows that he is an educated man, with the ability to meaningfully contribute by employment in a normal job.  Mr. Ortega Urquidi was a math teacher for 15 years in his home country of Mexico.  He has held jobs in the past and will be able to do so in the future.  A 120-month sentence will effectively punish the actions in this case, yet leave him able to get out and rejoin the workforce before retirement.

Further, he maintains connections to his family and friends.  He is still in contact with his six (adult) children, all in Mexico.  Their professions range from attorney, to psychologist, to teachers, to stockbrokers.  *See* PSR ¶ 75.  A person who has raised so many children to such success, has something to offer.  Mr. Ortega admits to errors in his own life.  But the success of his family speaks to there being more than meets the eye about him.

The jointly recommended sentence is also appropriate in light of Mr. Ortega Urquidi's significant health challenges.  *See* PSR ¶ 77-79.  Keeping him in prison beyond 120 months would yield a more severe sentence than necessary.  First, he will already be in prison into his 70s, and given the reduced life expectancy for someone with his condition, a longer-than-ten-year sentence risks making this into a life sentence.  Second, the cost to warehouse Mr. Ortega Urquidi will be significantly more than necessary.

It already costs $47,000 per year to keep a person in prison.  *See* https://www.federalregister.gov/documents/2025/12/15/2025-22777/annual-determination-of-average-cost-of-incarceration-fee-coif, accessed 3-4-26.  The financial and administrative costs associated with Mr. Ortega Urquidi's illness will only make that number grow, and indeed more so as he grows into his 70s.  Prolonging his  sentence

beyond 10 years, especially when he will be released directly to deportation, would impose a burden on the United States that is unnecessary and counterproductive.

The United States was well aware of Mr. Ortega Urquidi's record and actions, when it agreed to jointly recommend the 120-month sentence. Mr. Ortega Urquidi is a non-violent offender who, at worst, appears to be a run-of-the-mill drug mule here illegally, with three criminal history points. An extended sentence is unnecessary.

### 2. A 120-Month Sentence Honors the Plea Agreement and Assists the Government Long-Term

Honoring the plea agreement in this case also counsels a 120-month sentence. The government has an interest in encouraging plea agreements. *In re United States*, 32 F.4th 584, 591 (6th Cir. 2022). Particularly through appeal waivers, they encourage finality and incentivize defendants to waive valuable rights. Such results conserve government resources. *Id.* Here, through the plea agreement, the government did in fact receive the benefit of avoiding a costly, time-consuming trial and securing Mr. Ortega Urquidi's appeal waiver. Furthermore, because Mr. Ortega-Urquidi agreed to plead guilty to certain uncontested facts, the Government received the benefit of preserving the anonymity of its witnesses and the confidential nature of its investigative methods.

Honoring a plea agreement in this case encourages other defendants to reach plea agreements under Rule 11(c), instead of pleading under Rule 11(a)(1) without an agreement. Every time a defendant's sentence is worse than the one the government recommends, it undermines the government's main bargaining chip ("Waive your rights

in exchange for a valuable sentencing recommendation from the government"), and makes it seem less valuable than it appears.   Imposing a 120-month sentence in this case would maintain the government's ability to bargain and receive the benefit thereof.

### B.  18 U.S.C. § 3553(a)(6) – Avoid Unwarranted Sentence Disparities

A 120-month sentence in this case would avoid creating unwarranted sentence disparities between Mr. Ortega Urquidi and defendants with similar records who have been found guilty of similar conduct.  *See* 18 U.S.C. § 3553(a)(6).  Not only would a long sentence be unnecessary for someone with his sentencing profile, *See* PSR ¶ 112, but an upward variance or departure in this case would be unwarranted, and out of step with typical practice.

In 2024 (the most recent year for which data is available) in the Northern District of Ohio, for drug defendants, the average sentence was 82 months.  *See* United States Sentencing Commission Statistical Information Packet for the Northern District of Ohio, FY2024[1] at Table 7.  For immigration offenses, the average sentence was 11 months.  *Id.* Only 2% of all defendants in this district received an upward variance in that time, and none received upward departures.  *Id.* at Table 8.  Indeed, 44% received a *downward* variance.  *Id.* at Table 10.  The Judiciary Sentencing Information website, which was the basis for the statistics at PSR ¶ 112, showed 0% of defendants getting an upward variance with a CHC II / L 31[2] and powder cocaine.  *See* [https://jsin.ussc.gov/analytics/saw.dll?Dashboard](https://jsin.ussc.gov/analytics/saw.dll?Dashboard), accessed 3-4-26.

---

[1] Available at: [https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2024/ohn24.pdf](https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2024/ohn24.pdf), accessed 3-4-26
[2] This number adopts the PSR's contested offense level.

All of the above statistics suggest that an upward variance in this case, as the Court has suggested it is inclined to impose, would be anomalous.  Several factors suggest such a result would be unnecessary.  First, the government is recommending 120 months.  Dkt. No. 21 ¶ 16.  This case, then, would constitute the rare circumstance where the Court *both* varied upwards, *and* did so against the Government's recommendation.

Mr. Ortega Urquidi is as basic a drug and immigration offender, as one gets.  And there is nothing more to it.  The only gun referenced at all in this case (which might enhance the offense) is one of the objected-to "facts" in the PSR: It from a search of someone else's residence two weeks after Mr. Ortega Urquidi had been arrested.  *See* PSR ¶ 36.  And as for aggravating factors for immigration, there are none.  The PSR references "fraudulent identity documents," PSR ¶ 111, when discussing Mr. Ortega Urquidi's own passports (apparently treating an expired passport as fraudulent), and a green card that belongs to Mr. Ortega Urquidi's brother, Jorge Ortega Urquidi.  *See* PSR ¶¶ 34 and 73 (showing the birthdate of Jorge in ¶ 34 corresponding to the age of Jorge in ¶ 73, and correctly describing a photograph of Mr. Ortega Urquidi's younger brother as looking like Mr. Ortega Urquidi, but younger).  *See also United States v. Cover*, 800 F.3d 275, 278 (6th Cir. 2015) (district courts may not rely on the facts in the PSR if there is an unresolved dispute, citing Fed. R. Crim. P. 32(i)(3)); *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003).  There is nothing in this case that suggests he belongs in the 2% of defendants getting upward variance.

But even the PSR's contested enhancements – such as an organizer/leader enhancement for the defendant who personally carried drugs to a hand-to-hand

exchange, or holding him responsible for two separate 2-kilo shipments of an untested substance apparently sent by someone else to someone else – yield a guidelines range of 121 months at the low end.  There is simply no basis to vary upward in this case.  His sentence, including the doubled mandatory minimum from 21 U.S.C. § 841(b)(1)(B), and higher potential penalty under § 1326, already reflects that he has prior convictions.  A further enhancement is unwarranted.

### C.  18 U.S.C. § 3553(a)(2)(A-D)

#### 1.  Just Punishment should not Mean a Life Sentence

Nobody wants Mr. Ortega Urquidi, 63, to die in prison.  As noted above and in the PSR ¶ 77, Mr. Ortega Urquidi is not healthy.  He can expect a shortened life span because of his affliction.  Even the jointly recommended 120-month sentence raises the significant possibility that Mr. Ortega-Urquidi will pass away prior to completing his sentence. The probability of him doing so only increases if the Court imposes a longer sentence.

Nothing about Mr. Ortega Urquidi suggests that he merits a life sentence. Again, he is a non-violent drug and immigration offender with a CHC of II.  Congress did not intend for offenders such as Mr. Ortega-Urquidi to die in prison.  Especially since he will go from BOP to deportation to Mexico, it's improbable that Congress even wanted to have to pay for his medical care as he enters his eighth decade.  And the Sentencing Commission  -- even with the PSR's stretch calculations – likely did not expect a sentence much longer than 120 months.  The jointly-recommend 120-month sentence helps vindicate the actual and likely intentions of Congress, the Sentencing Commission, the DOJ, and Mr. Ortega Urquidi.

Section 3553(a)(2)(A) also talks about promoting respect for the law.  Part of that respect is promoted by taking a measured approach in sentences.  There is no need to impose a sentence over 120 months on Mr. Ortega Urquidi just because it is available.

### 2.  A 120-Month Sentence Will Deter Future Criminal Conduct

The jointly recommended sentence is sufficient to deter Mr. Ortega Urquidi from committing future crimes. See 18 U.S.C. § 3553(a)(2)(B) (requiring that a sentence be sufficient to afford adequate deterrence to criminal conduct). He knows he will get caught, and a longer sentence will not help him, or give general deterrence to the public.

A sentence beyond 120 months will not assist deterrence.  The Department of Justice says that it is the certainty of being caught, not sentence length, that provides specific deterrence to offenders: "The certainty of being caught is a vastly more powerful deterrent than the punishment." *Five Things about Deterrence*, Department of Justice, National Institute of Justice, June 5, 2016, available at https://nij.ojp.gov/topics/articles/five-things-about-deterrence, accessed 3-4-26.  It is the fact that Mr. Ortega has now been federally prosecuted twice, that will affect his risk calculation, because he obviously does not know how to evade detection. Similarly with the immigration offense: the expansion of immigration enforcement makes clear that undocumented immigrants will be caught and prosecuted.  A long sentence here will not amplify the certainty of being caught for immigration offenses.

### 3. Mr. Ortega Urquidi's Deportation after the Sentence Will Provide Protection

The Court will adequately protect the public by sentencing Mr. Ortega-Urquidi to 120 months in federal prison. A review of Mr. Ortega-Urquidi's background and criminal history reveals that he is not a violent individual. Indeed, none of his prior convictions concern guns, other deadly weapons, or crimes of violence. What is more, there are no facts or evidence to support the notion that Mr. Ortega-Urquidi exhibited violent tendencies or possessed a deadly weapon, here.

Mr. Ortega Urquidi will never be free in the United States again.  The public will be protected from any future crimes of Mr. Ortega Urquidi by his impending removal. Mr. Ortega Urquidi will go from prison (in 10 years), to ICE/ERO custody, to Mexico. The 1700 miles between Ciudad Juarez and Akron will be better community protection than any extended prison sentence.

### 4.  Prison Is Not for Rehabilitation

The Court need not be concerned with providing Mr. Ortega-Urquidi with educational or vocational training, medical care, or other correctional treatment. See 18 U.S.C. § 3553(a)(2)(D). As a non-citizen, Mr. Ortega Urquidi will be ineligible for most BOP rehabilitation programs (due to the ICE hold on him). So, whatever rehabilitation value prison would have – technically none under § 3582(a) – is defeated by his immigration status.  Thus, prison in this case cannot serve 18 U.S.C. § 3582(a)(2)(D). Further, even if he does rehabilitate, it will be enacted in Mexico.  Upon completion of his sentence, Mr. Ortega-Urquidi faces immediate and mandatory deportation.

## II.  REQUESTED BOP DESIGNATION

Mr. Ortega-Urquidi respectfully requests that the Court recommend that he be designated to Forth Worth FMC. In the alternative, he respectfully requests that he be designated to Carswell FMC.

## III. CONCLUSION

WHEREFORE, Mr. Ortega-Urquidi respectfully requests that this Court impose a sentence (a) 120 months in prison, (b) 8 years supervised release, (c) no fine, (d) no restitution, and (e) the mandatory special assessment.

March 4, 2026

Respectfully submitted,

s/ Johanes Maliza
Johanes Christian Maliza (0086875)
Allyson R. Cady(0098830)
BENESCH FRIEDLANDER COPLAN &
ARONOFF, LLP
127 Public Square, Suite 4900
Cleveland, OH  44114
Telephone:    (216) 363-4500
Fax:               (216) 363-4588
Email:            jmaliza@beneschlaw.com
                        acady@beneschlaw.com

*Attorney for Defendant*

9

## CERTIFICATE OF SERVICE

I certify that on March 4, 2026, the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

s/ Johanes Maliza
*Attorney for Defendant*
